**UNITED STATES of America, Appellee,**

v.

**Richard DeVINCENT, Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Charles TASHJIAN, Defendant, Appellant.**

Nos. 80–1022, 80–1023.

United States Court of Appeals, First Circuit.

Argued May 8, 1980.

Decided Sept. 16, 1980.

---

Joseph A. Lena, Boston, Mass., for appellant, Richard DeVincent.

James P. Duggan, Boston, Mass., for appellant, Charles Tashjian.

Stephen H. Jigger, Sp. Atty., Dept. of Justice, Boston, Mass., with whom Edward F. Harrington, U.S. Atty. and Jeremiah T. O'Sullivan, Sp. Atty., Dept. of Justice, Boston, Mass., were on brief, for appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and DAVIS,* Judge, U.S. Court of Claims.

DAVIS, Judge.

Appellants DeVincent and Tashjian were charged in a twenty–four count federal in-

* Sitting by designation.

dictment involving fifteen people. We are now concerned with count one stating a complex RICO conspiracy [1] and with count three charging appellants alone with federal extortion. The jury acquitted appellants (and two others) of count one,[2] then resumed deliberating and the next day returned guilty findings on three counts (not now involved), deliberated again and reported a deadlock on three counts, including count three. A mistrial was declared as to the latter three counts. DeVincent and Tashjian then moved that a retrial of count three would violate double jeopardy in view of their acquittal on count one. The District Court denied the motion and set count three for trial. Appellants each appealed under *Abney v. United States*, 431 U.S. 651, 656–62, 97 S.Ct. 2034, 2038–41, 52 L.Ed.2d 651 (1977), and the trial court has stayed proceedings on count three. We have to decide whether appellants' acquittal of the RICO conspiracy bars their retrial on the extortion count three on which the jury was unable to agree.[3]

Count one, the RICO conspiracy count, charged voluminously that a number of defendants, including DeVincent and Tashjian, agreed to participate in a "bust–out" scheme [4] by which businesses would be established, credit ratings created, merchandise ordered on credit with no intention to pay, inventories of merchandise assembled and stripped of identifying characteristics, and the merchandise then sold below wholesale cost to purchasers who knew the manner of acquisition, with the intent that the ordering business would be abandoned or placed in bankruptcy and the creditors left unpaid. The defendants, the indictment charged, were associated at some time from May 1974 to February 1979 in an "enterprise" under 18 U.S.C. § 1961(4)–"a group of individuals associated in fact for the purpose of operating a 'bust–out' bankruptcy fraud scheme." It was also part of the conspiracy, as charged, that DeVincent was to deliver payments from the sale of the merchandise, deducting ten percent for "protection" and also that DeVincent would use threats of force and violence to ensure that the merchandise was sold to appellant Tashjian and another.

A large number of separate overt acts was charged, including one which stated that in August 1974 DeVincent and Tashjian met with Allan Klein at Allan's Tape and Stereo where DeVincent physically beat Klein.

Count three charged both appellants with violating 18 U.S.C. §§ 1951 and 1952 (1976) by interfering with interstate commerce through extortion by obtaining and attempting to obtain from Allan Klein, with his forced consent, 10% of the proceeds from the sale of all merchandise obtained by Allan Tape and Stereo and the right to sell merchandise in the open market and to conduct the affairs of Allan's Tape and Stereo.

Both count one and count three, together with other counts, were tried at one trial, after which, as we have said, appellants were acquitted on count one and there was a mistrial on count three because of the jury's failure to agree.

---

1. RICO stands for Racketeer Influenced and Corrupt Organizations and refers to the pattern of racketeering offenses embodied in 18 U.S.C. §§ 1961–1963 (1976).

2. No defendant was convicted on that count; the other defendants either pleaded guilty prior to trial, had died or been severed, or had been acquitted by the court of that charge.

3. DeVincent was charged in three counts: counts one (RICO conspiracy), two (substantive offense of interference with interstate commerce), and three (substantive offense of federal extortion). He was acquitted on count one, and the jury could not agree on counts two and three. He appeals only as to count three.

Tashjian had fifteen charges against him, and was acquitted of eleven, including count one (RICO conspiracy). He was convicted on one count of bankruptcy fraud and another of receiving stolen goods–both now under separate appeal. The jury could not agree as to three counts: two, three, and seventeen. He appeals only as to the retrial of count three.

4. A "bust–out" scheme is described at some length in *United States v. Crockett*, 534 F.2d 589, 592 (5th Cir. 1976).

## I.

■ For this part of our opinion, we assume, contrary to our position in Part II, *infra*, that count three was a lesser included offense of count one. Even if that were so, there would be no double jeopardy, in the strict sense, in retrying count three.[5] Both counts were tried simultaneously, jeopardy attached at the same time, and count three is now available for retrial solely because of the mistrial at that first trial. The key is that there is a difference between separate, successive trials of greater and lesser offenses, and the different situation in which both are tried together, there is an acquittal of the greater, and the lesser needs to be retried because of the jury disagreement. In *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168, *reh'g denied*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 164, (1977), the plurality opinion observed that the policy behind the double jeopardy clause does not require prohibition of a retrial after a mistrial granted at the defendant's request. The Court pointed out that a defendant is normally entitled to have charges on a greater and lesser offense resolved in one proceeding, but there was no violation of the Double Jeopardy Clause if the defendant elected to have the two offenses tried separately. Neither of appellants here objected to the mistrial or contends that it was improperly granted.

■ The policy against double jeopardy does not normally apply to a retrial where a count fails simply because of a hung jury. *United States v. Sanford*, 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976); *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963). On this point, *United States v. Larkin*, 605 F.2d 1360 (5th Cir. 1979), *modified on other grounds*, 611 F.2d 585 (1980), is especially instructive for this case. There, at a single trial, a defendant was acquitted on six substantive counts and because of a deadlock a

mistrial occurred on the single conspiracy charge. The Fifth Circuit held that there was no double jeopardy bar to a retrial of the conspiracy charge (which it assumed to be a lesser included offense within the substantive counts). The court equated retrial after reversal of a conviction on the lesser offense with retrial of the lesser offense after a mistrial caused by a disagreeing jury. "[I]t is equally well settled that a defendant may be retried on a lesser offense of which he was convicted at an initial trial, after that conviction was reversed on appeal; and that that result obtains even though the first trial also resulted in a verdict of acquittal on a greater offense." *Id.* at 1368. The court then added, specifically noting the presence of the acquittal on the greater charges: "it is clear that the concept of continuing jeopardy normally applies to a mistrial caused by a deadlocked jury. * * * Furthermore, an acquittal on a greater offense does not preclude a retrial on a lesser offense to which continuing jeopardy has attached, and this result obtains whether the applicability of continuing jeopardy results from an appellate reversal of a conviction as in [*Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970)][6] or from a mistrial caused by a deadlocked jury." *Id.* at 1368–69. To the same effect, *see United States v. Scott*, 464 F.2d 832 (D.C.Cir. 1972); *Forsberg v. United States*, 351 F.2d 242, 244–46 (9th Cir. 1965), *cert. denied*, 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966).

The present case is governed by *Larkin* and the earlier decisions, with all of which we agree. Thus, even were we to concur that the RICO count, on which appellants were acquitted, included within it count three, on which there was a mistrial, there would be no double jeopardy bar to the retrial of count three. The simultaneous trial of the two counts, at the initial trial, would prevent the application of double

---

5. In Part III, *infra*, we consider the separate problem of collateral estoppel via the acquittal on the first count.

6. *Price v. Georgia* held that there could be no retrial of a greater offense of which the defend-

ant had been acquitted (like count one here), but also held that under the double jeopardy clause there could be a retrial of the lesser included offense which had been reversed on appeal.

jeopardy *strictissimi juris*, though the acquittal on count one might conceivably lead to collateral estoppel on some issues (discussed in Part III, *infra*).

## II.

■ We ultimately reject, however, the assumption, made in Part I, *supra*, that count one (the RICO count) includes count three (the extortion count). The conventional test for deciding whether two offenses are separate, for double jeopardy and punishment purposes, was formulated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). It is that the statutory framework for each offense "requires proof of a fact that the other does not," notwithstanding a substantial overlap in the proof offered to establish the crimes. *Id.* at 304, 52 S.Ct. at 182. *See Iannelli v. United States*, 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 1293, 43 L.Ed.2d 616 (1975); *Brown v. Ohio*, 432 U.S. 161, 166–68, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977). Where the lesser crime is wholly included in the greater one, the standard is normally unfulfilled because the lesser offense contains no factor not embodied in the greater. *Brown, supra*, 432 U.S. at 168, 97 S.Ct. at 2226; *Jeffers, supra*, 432 U.S. at 150–51, 97 S.Ct. at 2215–16.

Although the broad RICO count one refers to, and incorporates as one overt act, the incident on which count three is mainly based, the latter differs even with respect to this activity,[7] from count one in a least two interrelated but significant respects–no conspiracy is alleged or necessary for count three (merely extortion alone), while actual commission of, or attempt to commit, extor-

tion is unnecessary for the RICO charge. On that understanding of count three, it is a substantive charge which is separate, and stands apart, from the RICO conspiracy count. *United States v. Bayer*, 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947); *Pinkerton v. United States*, 328 U.S. 640, 642–44, 66 S.Ct. 1180, 1181–82, 90 L.Ed. 1489 (1946); *United States v. Cruz*, 568 F.2d 781, 782–84 (1st Cir. 1978), *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979), *reh'g denied*, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979); *United States v. Shelton*, 573 F.2d 917, 919–20 (6th Cir.), *cert. denied*, 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120 (1978). A substantive count of extortion is not included within a conspiracy count charging an agreement to commit extortion. "The underlying offense that may evince a conspirator's participation in the agreement does not constitute an element of the crime of conspiracy." *Cruz, supra*, 568 F.2d at 782. "An agreement is necessary to make out a conspiracy," but not the commission of the crime itself, while proof of commission of the crime is unnecessary to make out a conspiracy. *Id.* 782–83.[8] This principle is as much applicable to a RICO conspiracy as to the ordinary one. *See United States v. Rone*, 598 F.2d 564, 571 (9th Cir. 1979).

Count three charges both DeVincent and Tashjian with federal extortion but this does not turn the count into one of concert or conspiracy. Tashjian (who did not beat or threaten Klein at the incident mentioned in count one) was obviously charged as an aider and abettor under 18 U.S.C. § 2 (1976) (which is cited in the count); conspiracy is not charged at all. Aiding–and–abetting is

7. Of course, the RICO count also refers to several *business other* than Allan's Tape and Stereo and to several activities and events other than the incidents involving appellants, Allan Klein, and Allan's Tape and Stereo (the focus of count three).

8. There is an exception where the substantive and conspiracy counts happen to charge essentially the same offenses. *United States v. Austin*, 529 F.2d 559, 562–64 (6th Cir. 1976). That is not true here even if the exception be extended to a lesser included offense. As we have said, count one required proof of a conspiracy,

while that was no element of count three; conversely, count three called for actual commission of, or attempt to commit, the crime of extortion, while count one did not extend beyond a conspiracy.

As this court pointed out in *Cruz, supra*, 568 F.2d at 783, *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), treated the two offenses involved as lesser and greater because each was thought to require as necessary elements concerted action on the part of the participants. That is not true here.

separate and distinct from extortion conspiracy and both may stand. The substantive crime of extortion does not require more than one person for its commission. "Aiding, abetting and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy." *Pereira v. United States,,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954). Collateral estoppel apart (*see* Part III, *infra*), the statutory elements of the crimes charged in counts one and three are not the same but distinct under the *Blockburger* formulation.[9]

### III.

Still to be resolved is the issue whether the count one acquittal has any collateral estoppel effect on the retrial of count three. Although a part of the guarantees of the double jeopardy clause, *Ashe v. Swenson*, 397 U.S. 436, 442, 445–46, 90 S.Ct. 1189, 1193, 1195, 25 L.Ed.2d 469 (1970), collateral estoppel is separate from the application of the *Blockburger* rule or from the core concept of double jeopardy, as well as from the comparison of the statutory elements of the two crimes (all treated in Parts I and II, *supra*).[10] *See Brown, supra*, 432 U.S. at 166–67, n.6, 97 S.Ct. at 2225–26 (1977). Collateral estoppel need not apply to a whole count but instead can control a single element of a count or a trial. *Larkin, supra*, 605 F.2d at 1369. It means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe, supra*, 397 U.S. at 443, 90

S.Ct. at 1194. This determination is to be made, where a previous judgment of acquittal was based (as here) on a general verdict, on the record of the prior proceeding, including the pleadings, the evidence, charge, and other relevant matter, and the court must decide "whether a rational jury could have grounded its verdict upon an issue other than that which the [appellants seek] to foreclose from consideration." *Id.* at 444, 90 S.Ct. at 1194. The rule of collateral estoppel in criminal cases is to be applied "with realism and rationality," *id.*, and the inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180 (1948). Moreover, an acquittal carries distinct implications for collateral estoppel. It is sometimes said that, where a person has been tried and *convicted* for a crime which has various incidents included in it, he cannot be a second time tried for one of those included incidents. *See, e. g. Brown, supra*, 432 U.S. at 168, 97 S.Ct. at 2226. This is because a verdict of guilty necessarily finds the existence of each of the included incidents. But an acquittal can be based on the absence of only one incident or element, and it cannot therefore be assumed that the jury found against the prosecution on every one of the statutory factors. It is settled, though, that there can be no retrial of a charge on which the defendant has been acquitted. *Price, supra*, 398 U.S. at 328, 90 S.Ct. at 1760.

The basis for the appellants' present claim of collateral estoppel (which does not seem to have been directly made below) is either that the jury's acquittal on count one shows that DeVincent and Tashjian never acted together, or that the particular extor-

---

**9.** Several cases after *Pereira* hold that conspiracy and aiding and abetting are separate and district offenses. *United States v. Krogstad,* 576 F.2d 22, 29 (3d Cir. 1978); *United States v. Peterson*, 524 F.2d 167, 174 (4th Cir. 1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *United States v. Townes*, 512 F.2d 1057, 1058 (6th Cir.), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975); *United States v. Valencia*, 492 F.2d 1071, 1073–74 (9th Cir. 1974).

**10.** For instance, in *Larkin, supra*, Part I, the court first determined that the core concept of double jeopardy did not bar a retrial of the mistried conspiracy count, but then decided that collateral estoppel prevented inclusion of two separate issues in the retrial of that count. 605 F.2d at 1369–71.

tion alleged in count three never occurred.[11] Our conclusion, however, is that a rational jury could have based its acquittal on some issue unrelated to count three.

Apart from the allegation of conspiracy in count one and its absence in count three, the RICO conspiracy of count one was very much broader in form, content and parties. It stated the participation of at least fifteen people in a five year wide–ranging conspiracy involving numerous "bust–out" activities and several defendant companies, with twenty–seven acts (only one or perhaps two of which concerned count three).[12] Under the law, this RICO conspiracy had to involve conduct, or participation, in the affairs of an enterprise, affecting commerce, through a pattern of racketeering. 18 U.S.C. § 1962. Racketeering activity may come about through commission of over thirty state and federal crimes, including federal extortion as one. 18 U.S.C. § 1961(1). The necessary pattern of racketeering activity requires at least two acts of racketeering activity–two separate crimes or threats of crimes. Above all the defendants in count one, a conspiracy charge, had to conspire or join or participate in an enterprise embodying such a pattern of racketeering activity. *See United States v. Elliott*, 571 F.2d 880, 902–03 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Clemones*, 577 F.2d at 1255.

With this complex and multi–faceted count before it, we do not consider that a rational jury likely would have acquitted on that charge because it believed that no extortion of Allan Klein, as alleged in count three, had occurred or because Tashjian and DeVincent had no connection with the asserted extortion from Klein. The course of deliberations itself indicated the contrary. The acquittal on count one occurred on one day. At that time there were no verdicts on any of the substantive counts. On the next day Tashjian and another were convicted on two RICO predicate crimes (not now involved). It was only on the third day that the jury disagreed as to count three. If, as appellants suppose, they had already decided under count one that Tashjian and DeVincent did not act together, or that the count three extortion did not happen, they would have acquitted under count three instead of disagreeing. *Cf. Larkin, supra*, 605 F.2d at 1370; *Scott, supra*, 464 F.2d at 833–34; *Forsberg, supra*, 351 F.2d at 246, 248.

It is most probable that the acquittal rested on the failure of the jury to believe that the count one defendants had engaged in the single enterprise charged. Tashjian's counsel argued strongly for separate conspiracies. The trial judge's charge to the jury observed that the trial was centered on the RICO charge, the defendants claimed at least three conspiracies under that count, and that it was up to the prosecution to prove a single enterprise. An acquittal based on that ground of multiple enterprises or conspiracies would obviously not estop count three from being retried.

In view of the intricate nature of count one, and the course of the jury's deliberations, we are compelled to think, realistically and rationally, that it has not been shown that the acquittal on count one involved any determination of the elements of count three.

*Affirmed.*

---

11. The defense at the trial to the evidence that Klein was beaten by DeVincent in an effort to make Klein sell to Tashjian as part of the "bust–out" scheme, was that the incident never happened, or that DeVincent was simply trying to collect from Klein a gambling debt, entirely unconnected with any racketeering or "bust–out" enterprise or conspiracy.

12. Count three alleged a three and one–half month extortion by Tashjian and DeVincent with respect to Allan Klein and Allan's Tape and Stereo, alone.