**Gregory Paul WILSON, Petitioner–Appellant,**

v.

**Stan CZERNIAK, Superintendent Oregon State Penitentiary, Respondent–Appellee.**

No. 02–36121.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 2003.

Filed Jan. 20, 2004.

Richard L. Wolf (argued), Portland, Oregon, and Dennis N. Balske (briefed), Portland, OR, for the petitioner-appellant.

Timothy A. Sylwester, Assistant Attorney General, Salem, OR, for the respondent-appellee.

Before ALARCÓN, FERGUSON, and RAWLINSON, Circuit Judges.

FERGUSON, Circuit Judge.

Gregory Paul Wilson ("Wilson") appeals the District Court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus to prevent the State of Oregon from retrying him on three counts of aggravated felony murder. We have jurisdiction over his appeal under 28 U.S.C. § 1291 and 28 U.S.C. § 2253. We hold that the Fifth Amendment Double Jeopardy Clause prohibits Wilson's retrial because he has already been tried, and acquitted, of a lesser included offense of the charges on which the State now seeks to reprosecute him. Accordingly, we reverse the District Court and grant Wilson's petition for a writ of habeas corpus.

I. Background and Procedural History

A. Wilson's First Trial

In 1993, Wilson first stood trial in Multnomah County Circuit Court, in Oregon, for the kidnapping and murder of Misty Largo. He was convicted on all fifteen counts of the indictment: aggravated murder (counts 1–9), intentional murder (count 10), kidnapping (counts 11–13), assault (count 14), and abuse of a corpse (count 15).

At sentencing, the State advised the trial court that the intentional murder charge in count 10 merged with all nine counts of aggravated murder. The trial court then ordered that the intentional murder charge in count 10 be merged with the first count for aggravated felony murder. Wilson was sentenced to death on all nine aggravated murder counts.

The Oregon Supreme Court reviewed the convictions pursuant to Oregon law requiring automatic and direct review of all death sentences. The Court overturned Wilson's convictions on counts 1 through 10(aggravated murder and intentional murder) but affirmed his convictions on the remaining offenses. *State v. Wilson*, 323 Or. 498, 918 P.2d 826 (1996).

B. Wilson's Second Trial

Wilson's retrial on the convictions overturned by the Oregon Supreme Court proceeded in August 2000.[1] At that trial, the jury acquitted Wilson on counts 4–8 (aggravated murder) and count 9 (intentional murder).[2] Despite acquitting Wilson for intentional murder, the jury hung on the greater counts of aggravated felony murder (counts 1–3). At the same time, the jury convicted Wilson on five counts of attempted aggravated murder, which were charged as lesser included offenses to counts 4 through 8, and on attempted murder, a lesser included offense to count 9.

Following the jury's decision, Wilson moved for a judgment of acquittal on the

---

1. Count 8 of the original ten reversed counts was dismissed before trial, so Wilson was retried on nine of the original ten counts. The original count 9 was renumbered as count 8, and the original count 10(intentional murder) was renumbered as count 9.

2. The dissent reproduces at length the District Court's summation of the prosecution evidence presented at Wilson's trial. The recitation of the grisly details, however, does not change the fact that the jury acquitted Wilson of intentional murder as well as of five counts of aggravated murder.

three hung counts of aggravated felony murder and asked the trial court to bar reprosecution on those counts. He argued that as he had been acquitted of intentional murder (count 9), he necessarily had to be acquitted of aggravated felony murder, which by definition subsumed intentional murder. Wilson contended that although the State generally can retry a defendant on counts which result in a hung jury, in this case, the jury's separate not guilty verdict on intentional murder foreclosed further prosecution on the hung counts of aggravated felony murder. The trial court denied the motion for judgments of acquittal and ruled that the State could retry Wilson on counts 1–3.

In rejecting Wilson's argument that he could not be retried for aggravated felony murder because the jury had acquitted him of intentionally killing Largo, the trial judge appeared to attach significance to the fact that the jury had found him guilty of attempted aggravated murder and attempted murder. In a hearing on the matter, the court commented:

> My issue brings me back to what of Counts 1, 2, and 3 can be tried? Because I can say to defense counsel they did find him guilty of Attempted Aggravated Murder, which also requires an intentional act, and I still am uncertain whether or not the state would be bound to not prosecute on anything above the Attempt and/or the Felony Murder.

While the trial judge issued an order permitting retrial on the hung counts, she also held open the possibility that principles of collateral estoppel might prevent the State from ultimately charging those offenses.

> Right now, I'm ordering counts 1, 2, and 3 to be tried, but you need to look at this.
>
> I have not and cannot possibly, at this stage, based upon what we're saying, make the kinds of intimate evidentiary rulings. I can see us getting to the end of the state's case in chief and the court not being able to submit all the charged offenses.

Wilson then petitioned the Oregon Supreme Court for an alternative writ of mandamus on state law and federal constitutional grounds, invoking his Fifth Amendment right to protection from double jeopardy. The Oregon Supreme Court denied his petition without opinion.

## C. Federal Court Proceedings

Wilson then petitioned for a writ of habeas corpus from the United States District Court for the District of Oregon seeking to bar reprosecution of the charges of aggravated felony murder on double jeopardy grounds. The U.S. Magistrate Judge recommended granting the petition on the basis that collateral estoppel prohibited the State from relitigating the question of intent to kill, which had already been resolved in Wilson's favor. *Wilson v. Czerniak,* 2002 WL 1774745, at *3, 2002 U.S. Dist. LEXIS 14899 at * 14–16 (D.Or., July 30, 2002).

The District Court rejected the Magistrate Judge's Findings and Recommendations. *Wilson v. Czerniak,* 238 F.Supp.2d 1207 (D.Or.2002). The Court, also focusing on the collateral estoppel prong of Wilson's double jeopardy claim, noted that the jury's acquittal on intentional murder and failure to reach a decision on aggravated felony murder were inconsistent responses to the question of whether Wilson intentionally murdered Largo. *Id.* at 1214. Where a jury reaches inconsistent results, the Court held, it was not an "unreasonable application" of clearly established Supreme Court law for the State Court to refuse to apply collateral estoppel. *Id.* at 1212–16. Thus, the District Court dismissed the habeas petition.

## II. Discussion

### A. Standard of Review

■ We review de novo the District Court's decision to deny a 28 U.S.C. § 2254 habeas petition. *Killian v. Poole,* 282 F.3d 1204, 1207 (9th Cir.2002).

Federal courts may not issue a habeas writ on the basis of any claim adjudicated on the merits in State Court unless the State Court decision was "contrary to," or involved an "unreasonable application" of, "clearly established Federal law, as determined by the Supreme Court," or resulted from an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1); § 2254(d)(2).

■ Where a State Court does not provide a rationale for its decision, this Court reviews the record to determine whether the State Court's decision contravened, or unreasonably applied, clearly established law. *Delgado v. Lewis,* 223 F.3d 976, 981–82 (9th Cir.2000). We do not independently decide the contested legal question, but focus on whether the State Court decision should be reversed under the § 2254 standard. *Id.* at 982.

### B. Double Jeopardy Claims

On appeal, Wilson contends that under clearly established federal law, his acquittal on intentional murder: (1) prohibits a subsequent prosecution of aggravated felony murder because intentional murder is a lesser included offense of that crime; (2) results in collateral estoppel barring a retrial on charges that would require finding that he intentionally murdered the victim; (3) results in an "implied acquittal" on the greater inclusive offense of aggravated felony murder. Because we grant relief on Wilson's first theory of double jeopardy, we do not reach his collateral estoppel or implied acquittal claims.

### 1. Double Jeopardy Law

The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In determining whether to characterize two charges as the "same offense" triggering Fifth Amendment double jeopardy, or as two separate offenses, courts use the definition set forth in *Blockburger v. United States:* "the test to be applied ... is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Where each offense requires proof of at least one unique element, there are two offenses, but where all the elements of one crime are included in the definition of another crime, the two charges represent the "same offense" under the Double Jeopardy Clause.

Well-settled Supreme Court precedent provides that a criminal defendant may not be retried for a crime following an acquittal or conviction on a lesser included or greater inclusive offense. In *Brown v. Ohio,* the Court barred a defendant's reprosecution for auto theft following a conviction for the lesser included offense of joyriding. 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Stating that the *Blockburger* test applied as much to successive prosecutions as to cumulative punishments from a single trial, *id.* at 166, 97 S.Ct. 2221, the Court found that since the Ohio statutory definition of auto theft included every element of joyriding, the defendant could not be tried successively on the two charges. *Id.* at 168, 97 S.Ct. 2221.

The Supreme Court has consistently held that under the Double Jeopardy Clause, an acquittal on one offense bars a retrial on the "same offense" as defined in *Blockburger.* It cannot be seriously questioned that this principle constitutes "clearly established" Supreme Court law

for purposes of habeas review. *See, e.g., United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (noting that *Blockburger* analysis as a test for determining whether the Double Jeopardy Clause bars multiple trials "has deep historical roots and has been accepted in numerous precedents of this Court.").

### 2. Intentional Murder as a Lesser Included Offense

■ Here, Wilson faces reprosecution for aggravated felony murder although he has already been tried, and acquitted, for intentional murder. Intentional murder is a lesser included offense of aggravated felony murder. Under Oregon law, a charge of intentional murder requires that a person: 1) without justification or excuse; 2) causes the death of another human being; and that 3) the homicide is "committed intentionally." OR. REV. STAT. § 163.005(1) (1991); OR. REV. STAT. § 163.115(1)(a) (1991).

Aggravated felony murder requires that a person: 1) without justification or excuse; 2) causes the death of another human being; 3) "personally" commits the homicide; 4) "intentionally" commits the homicide; 5) commits or attempts to commit a crime listed in OR. REV. STAT. § 163.115(1)(b);and 6) in the "course of and in furtherance of the crime," or "during the immediate flight therefrom"; 7) causes the death of a person other than one of the participants. OR. REV. STAT. §§ 163.005(1); 163.095(2)(d); 163.115(1)(b) (1991).

■ Because intentional murder does not require proof of any element not contained within aggravated felony murder, it is a lesser included offense of the latter. The fact that intentional murder was charged separately as a "stand-alone charge" in count 9, and not submitted specifically as a lesser included offense to any of the three aggravated murder charges,

does not make a constitutionally relevant difference. Furthermore, the State itself has previously acknowledged that aggravated murder subsumes the elements of intentional murder: At the sentencing hearing following Wilson's first trial, the State recommended that the intentional murder count merge with each of the aggravated murder counts, including counts 1–3. In making that recommendation, the State of Oregon applied a merger test identical to the *Blockburger* test. The State does not now contest—as it cannot—Wilson's characterization of intentional murder as a lesser included offense of aggravated felony murder.

Instead, the State urges that we reject Wilson's double jeopardy claim because of the Supreme Court's holding that a hung jury does not foreclose retrial on the unresolved counts. *Richardson v. United States,* 468 U.S. 317, 325–26, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). In *Richardson,* the defendant was tried for three narcotics violations and was acquitted on one count, with the jury unable to reach a decision on the other two counts. 468 U.S. at 318–19, 104 S.Ct. 3081. The petitioner argued that the government could not retry him on the two hung counts because it had failed to establish his guilt beyond a reasonable doubt at the first trial. *Id.* at 322–23, 104 S.Ct. 3081. Rejecting that claim, the Court confirmed that the declaration of a mistrial following a hung jury "is not an event that terminates the original jeopardy to which petitioner was subjected." *Id.* at 326, 104 S.Ct. 3081.

Applying *Richardson,* the District Court summarily rejected Wilson's argument that his prior acquittal on intentional murder barred retrial for aggravated felony murder. In doing so, the Court misapplied the law. *Richardson* involved separate and unrelated offenses and raised no *Blockburger* issue. By contrast, Wilson's

retrial on the hung counts is barred not because he has already stood trial on those charges, but because he has been acquitted of a separate lesser included offense. Wilson's claim of "original jeopardy" rests entirely on the intentional murder acquittal, a charge on which jeopardy properly attached and terminated.

This analysis does not create an "exception" to *Richardson,* as the dissent suggests. We adhere fully to the *Richardson* rule that a hung jury does not terminate jeopardy on the unresolved counts. Here, jeopardy plainly did not terminate on the three hung counts in Wilson's trial. However, jeopardy has terminated on intentional murder. It is *that* termination of jeopardy which constitutes the "original jeopardy" that bars the "double jeopardy" presented by a retrial. The dissent's failure to recognize this distinction leads it to misapply *Richardson.*

Nor does the fact that the Supreme Court has not ruled on the exact fact pattern of this case prevent us from granting relief. For us to overturn a state court decision on habeas review, the Supreme Court need not have addressed a factually identical case so long as it has clearly determined the applicable law. *Patterson v. Gomez,* 223 F.3d 959, 962 (9th Cir.2000). It is not surprising that the Supreme Court has not addressed a factually similar case, especially because juries do not often acquit on one count and then hang on greater inclusive offenses in the same trial. The unusual circumstances of this case, however, do not discharge a state court from its obligation to reasonably apply existing Supreme Court precedent, nor do they paralyze our ability to overturn a state court's unreasonable application of that law.

The dissent, like the District Court, would also deny relief based on *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Powell,* the Supreme Court ruled that a criminal defendant could not upset a conviction because it was inconsistent with an acquittal on another count at the same trial. *Id.* at 64–69, 105 S.Ct. 471. The Court stated that an inconsistent verdict did not necessarily represent a "windfall" to the government but might have resulted from "mistake, compromise, or lenity" favoring the defendant. *Id.* at 65, 105 S.Ct. 471. The Court further rejected the argument that an acquittal on one count should collaterally estop a finding of guilt on a compound offense, stating that collateral estoppel is based on the assumption that the jury acted rationally. *Id.* at 68, 105 S.Ct. 471.

Here, we grant relief not because the jury's conclusions were inconsistent, nor based on principles of collateral estoppel, but because a retrial for aggravated felony murder would subject Wilson twice to jeopardy for the same offense. *Powell* concerned a single trial, and simply did not address whether or not a defendant can be retried on a charge after he has already been acquitted of a separate lesser included offense. The *Powell* rule that collateral estoppel does not apply where a jury result is inconsistent might bear on Wilson's *second* claim for relief, predicated on collateral estoppel. We do not need to reach that question, however, as we have already concluded that Wilson's reprosecution violates the Double Jeopardy Clause because aggravated felony murder is a greater inclusive offense of intentional murder. The dissent's lengthy disquisition on *Powell* deals exclusively with the collateral estoppel element of the Double Jeopardy Clause. *Powell* did nothing, however, to eliminate a defendant's protection from double jeopardy resulting from a successive prosecution for the same offense.

We hold that the State Court's decision permitting Wilson's retrial unreasonably applied clearly established Supreme Court

precedent. Having once been acquitted of the lesser included offense of intentional murder, Wilson may not be retried on charges of aggravated felony murder. In double jeopardy cases, the constitutional harm to be avoided is the retrial itself, not just a conviction or sentence resulting from that trial. *Price v. Georgia*, 398 U.S. 323, 331, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). Consequently, double jeopardy claims present an exception to the general rule requiring federal courts to abstain from interfering with pending state proceedings. *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir.1992). Therefore, we REVERSE the denial of Wilson's habeas corpus petition and direct the District Court to grant his petition.

ALARCÓN, Circuit Judge, dissenting.

I respectfully dissent.

In this matter, an Oregon state court jury found Mr. Wilson not guilty of intentional murder but was unable to reach a verdict on three counts of aggravated murder. An intent to kill is an element of the crime of aggravated murder under Oregon law. The state trial court denied Mr. Wilson's motion to bar his retrial for aggravated murder on Fifth Amendment double jeopardy grounds. Mr. Wilson filed a petition for an alternative writ of mandamus before the Supreme Court of Oregon in which he invoked his Fifth Amendment right to protection from double jeopardy. The petition was denied without opinion.

Mr. Wilson filed a state prisoner petition for habeas corpus in the District Court for the District of Oregon. Relying on the United States Supreme Court's decisions in *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), and *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), District Judge Robert E. Jones denied the petition. The district court held, *inter alia*, that double jeopardy did not apply

because the jury's inability to reach a verdict on the aggravated murder charges was inconsistent with its decision to acquit Mr. Wilson of the separately pleaded crime of intentional murder. *Wilson v. Czerniak*, 238 F.Supp.2d 1207, 1214 (D.Or. 2002).

I would affirm the district court's denial of habeas corpus relief. I agree with Judge Jones's conclusion that the state court's decision to permit retrial of the aggravated murder charges is not contrary to, or an unreasonable application of clearly established decisions of the United States Supreme Court. *Id.* at 1218.

The majority has failed to cite any decision of the United States Supreme Court that holds that the double jeopardy doctrine applies to bar a retrial where a jury's failure to reach a verdict is inconsistent and irrational in light of the fact that it returned a not guilty verdict on a separately pleaded crime containing a common essential element. The majority's attempt to distinguish the Supreme Court's decisions in *Richardson* and *Powell* because of their factual dissimilarities from the matter *sub judice* is not persuasive.

## I

The evidence presented to the jury is set forth in the district court's opinion:

> The victim, Misty Largo, was a homeless teenager who had been living in Portland for 6 to 12 months at the time of her death. On July 25, 1992, defendant, along with Greg Wilson and two other men, drove to an area under the Marquam Bridge where Largo then was living. Defendant and Wilson were concerned that Largo was spreading rumors about Wilson's having stabbed someone.
>
> The group found Largo and escorted her back to their vehicle at knifepoint. They drove to defendant's house. De-

fendant took Largo into the house, also at knifepoint. Many people were there. Largo was taken into a back room. Wilson instructed several of the people present to hit Largo in the face, and they did. Largo was kept in the back room, where she was repeatedly interrogated and slapped.

The next day, defendant and Wilson left the house and told others in the house to make sure that Largo did not leave. When defendant and Wilson returned later that day, Largo was interrogated and slapped for several hours. Then she was taken again to the back room. At some point that evening, Wilson, in defendant's presence, decided that he would kill Largo.

Largo was tied to a wheelchair. Wilson and defendant first tried to kill Largo by poisoning her with a glass of water in which they had dissolved a nitroglycerin pill. When that act failed to kill Largo, defendant found a plastic bag and placed it over Largo's head. After about five minutes, Largo was still breathing. Defendant then located a piece of speaker wire and wrapped it around Largo's neck. Defendant and Wilson took turns choking Largo with the speaker wire for five to ten minutes. Still not convinced that Largo was dead, Wilson hit Largo on the sternum and throat. She 'gurgled and choked and stopped breathing.' After Largo died, defendant said that he would dispose of her body. Defendant and Michael Leon Stanton, another man at the defendant's house, left with the body. Defendant later said that he had hit Largo twice in the head with a splitting maul and that he and Stanto[n] had stabbed her in the heart.

*Wilson v. Czerniak,* 238 F.Supp.2d at 1209–10.

## II

In enacting the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1),. Congress sharply circumscribed federal court review of a state court's decision rejecting a claim that a judgment of conviction must be set aside because it violates federal law.

Section 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

A state court acts "contrary to ... clearly established Federal law" if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Ramdass v. Angelone,* 530 U.S. 156, 165–66, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000). In *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court stated that it is not enough that the federal court is left with a firm conviction that the state court's decision was incorrect or erroneous. Rather, that application must be objectively unreasonable. *Id.* at 1175. The Court reasoned as follows: "Under Section 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (quoting *Williams v. Taylor,* 529 U.S. at 411, 120 S.Ct. 1495).

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. Amdt. 5. This constitutional prohibition "was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In *Richardson*, the United States Supreme Court held that "jeopardy does not terminate when the jury is discharged because it is unable to agree." 468 U.S. at 326, 104 S.Ct. 3081.

Here, the jury was discharged because it was unable to agree regarding whether Mr. Wilson was guilty of three counts of aggravated murder. Under the clearly established rule announced in *Richardson*, Mr. Wilson was not placed in jeopardy because the jury was unable to agree. Therefore, the state court's decision to deny Mr. Wilson's motion to bar his retrial on Fifth Amendment double jeopardy ground was not contrary to, or an unreasonable application of the rule clearly established by the Supreme Court in *Richardson*.

To avoid applying *Richardson*, the majority has created an exception to the principle that a jury's inability to reach a verdict does not bar a retrial: namely, a jury's inability to reach a verdict constitutes jeopardy if the defendant was acquitted of a separately charged offense that is included in the offense about which the jury disagreed. Assuming, *arguendo*, that the United States Supreme Court will some day adopt the majority's exception to the rule announced in *Richardson*, this court lacks the power to apply a new rule in state prisoner habeas corpus proceedings filed pursuant to 28 U.S.C. § 2254. In *Penry v. Lynaugh*, 492 U.S. 302, 109

S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Supreme Court held that "new rules will not be applied or *announced* in cases on collateral review...." *Id.* at 313, 109 S.Ct. 2934 (emphasis added) (citing *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). Thus, the exception to *Richardson* announced by the majority in this matter would not be applicable on this collateral review. It should also be noted that the majority's new rule announced in this matter is based on its reading of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Each of these cases, however, was decided by the Supreme Court *prior* to its decision in *Richardson*.

Even if the majority is correct in concluding that the state courts erred in failing to apply *Blockburger* and *Brown* to the procedural facts presented in this record, a federal court cannot reverse a state court's judgment "simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. at 411, 120 S.Ct. 1495. The state trial court's decision that the double jeopardy doctrine did not bar further prosecution of the aggravated murder charge did not contradict the Supreme Court's decision in *Richardson*. Rather, the denial of the motion to bar a retrial on the aggravated murder charges is clearly consistent with the rule announced in *Richardson* that "jeopardy does not terminate when the jury is discharged because it is unable to agree." 468 U.S. at 326, 104 S.Ct. 3081.

III

With respect, I also disagree with the majority's summary rejection of application of *United States v. Powell* to the facts

set forth in this record. In *Powell,* the United States Supreme Court held that the Double Jeopardy Clause does not apply when a jury has reached inconsistent verdicts. 469 U.S. at 64–65, 105 S.Ct. 471. The jury found the defendant guilty on one charge but found her not guilty on a separately charged offense although the verdicts were irreconcilable on the facts. *Id.* at 64–69, 105 S.Ct. 471. Here, the jury acquitted Mr. Wilson of the crime of intentional murder, but was unable to reach a verdict on three counts of aggravated murder, even though an element of that crime is that the perpetrator intended to murder the victim. This result is clearly irrational and inconsistent. In *Powell,* the Court held that:

> where truly inconsistent verdicts have been reached, "[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not reach their real conclusions, but that does not show that they were not convinced of the defendant's guilt." The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, as the above quote suggests, inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.

*Powell,* 469 U.S. at 64–65, 105 S.Ct. 471 (internal citation omitted) (quoting *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932)).

In this matter, as in *Powell,* it is possible that some of the jurors were convinced that Mr. Wilson was guilty of aggravated murder, because he intended to kill the victim, but could not persuade their fellow jurors to reach a unanimous verdict of guilty of that crime. It is equally plausible that, "through mistake, compromise, or lenity," the jurors arrived at an inconsistent verdict regarding the offense of intentional murder. *Powell,* 469 U.S. at 65, 105 S.Ct. 471.

In *Powell,* the Court affirmed the jury's verdict *convicting* the defendant, notwithstanding its inconsistent verdict on a separate offense. Thus, under *Powell,* had the jury in this matter *convicted* Mr. Wilson of aggravated murder, because the evidence showed an intent to kill the victim, an appellate court would be required to affirm the conviction, even though the jury inconsistently acquitted him of the separately charged offense of intentional murder.

Mr. Wilson's has attempted to distinguish *Powell* on the basis that in this matter the jury did not *convict* him of aggravated murder, but instead, could not reach a verdict on that count. The logic of this argument is somewhat baffling. Under Mr. Wilson's interpretation of *Powell,* the Double Jeopardy Clause applies if the jury does *not* reach a verdict, but does not apply if it finds the defendant guilty. No United States Supreme Court decision has reached this incongruous result where the jury's conclusion is inconsistent or irrational. Even if the state trial courts's implicit application of *Powell* to the inconsistent result reached in this case was erroneous, its decision that the Double Jeopardy Clause did not bar reprosecution on the aggravated murder charges was not an

objectively unreasonable application of the decision of our nation's highest court in *Powell*.[1]

I would affirm the district court's denial of Mr. Wilson's § 2254 petition.

---

1. The state courts did not cite *Richardson* or *Powell* in rejecting Mr. Wilson's motion to bar a retrial on the aggravated murder charge. The Supreme Court has held, however, that citation or awareness of its controlling prece-dents is *not* required "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2003).